UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

GREAT LAKES CULTIVATION, LLC,                    Case No. 21-12775
                                                 Honorable Victoria A. Roberts
        Debtor.
_____/

GREAT LAKES CULTIVATION, LLC,

        Appellant,

v.

ANDREW R. VARA, United States Trustee,

        Appellee.
_____/

## ORDER AFFIRMING THE BANKRUPTCY COURT'S ORDER DISMISSING DEBTOR'S CHAPTER 7 BANKRUPTCY CASE

## I.    INTRODUCTION

Great Lakes Cultivation, LLC ("GLC") – a medical marijuana facility which grew and sold medical marijuana – filed for Chapter 7 bankruptcy.

The United States Trustee moved to dismiss the case. The bankruptcy court granted the motion and dismissed the case for cause pursuant to 11 U.S.C. § 707(a) – finding, among other things, that it would be impossible to lawfully administer GLC's bankruptcy estate.

GLC appeals the dismissal to this Court.  It says the bankruptcy court made an incorrect legal conclusion when it dismissed the case under § 707(a).

Before the Court are: (1) GLC's appellate brief requesting that the Court reverse the bankruptcy court's order of dismissal and reinstate its bankruptcy case; and (2) the United States Trustee's brief asking the Court to affirm the dismissal order.

For the reasons below, the Court **AFFIRMS** the bankruptcy court's order dismissing GLC's bankruptcy case.

## II.    CHAPTER 7 BANKRUPTCY – STATUTORY FRAMEWORK

### A.    Chapter 7 Bankruptcy Generally

When a debtor files bankruptcy under Chapter 7, a legal entity known as the bankruptcy "estate" is created, and all of the debtor's property and all proceeds from that property become property of the bankruptcy estate. *In re Blasingame*, 920 F.3d 384, 388 (6th Cir. 2019); 11 U.S.C. § 541(a).  A corporate chapter 7 bankruptcy case "is designed to provide an orderly proceeding in which the debtor corporation's assets may be marshalled and their pro rata distribution to creditors obtained."  *NLRB v. Martin Arsham Sewing Co.*, 873 F.2d 884, 887 (6th Cir. 1989).

**B.    The Role of the United States Trustee**

The United States Attorney General appoints one United States Trustee for each of twenty-one geographical regions for a term of five years.  28 U.S.C. § 581.  Each United States Trustee is an officer of the Department of Justice ("DOJ").  The current United States Trustee for Region 9 – which encompasses Michigan and Ohio – is Andrew Vara.

United States Trustees' duties include: (1) supervising the administration of bankruptcy cases; (2) acting in the public interest to promote the efficiency, and protect and preserve the integrity, of the bankruptcy system; (3) taking legal action to enforce the requirements of the Bankruptcy Code and to prevent fraud and abuse; and (4) establishing and supervising a panel of private trustees who administer "bankruptcy estates" in cases filed under Chapter 7. *See* 28 U.S.C. § 586(a); H.R. Rep. No. 95-595 at 109, *reprinted in* 1978 U.S. Code Cong. & Admin. News at 6070. *See also* https://www.justice.gov/ust/about-program.

United States Trustees have standing to appear and be heard on any issue in any bankruptcy case or proceeding. 11 U.S.C. § 307 ("The United States trustee may raise and may appear and be heard on any issue in any case or proceeding under this title . . . ."); *Thompson v. Greenwood*, 507 F.3d 416, 420 n.3 (6th Cir. 2007); *In re Revco D.S., Inc.*, 898 F.2d 498, 500

3

(6th Cir. 1990).  Particularly, § 707(a) contemplates that United States Trustees will file motions to dismiss. *See* 11 U.S.C. § 707(a)(3) (authorizing dismissal "on a motion by the United States trustee").

### C.   Chapter 7 of the Bankruptcy Code Requires a Private Trustee to Take Possession of and Administer a Debtor's Assets

In Chapter 7 cases, the United States Trustee appoints a private trustee to administer the bankruptcy estate.  *In re Blasingame*, 920 F.3d at 388; 11 U.S.C. §§ 323, 701, 704.  Private trustees are not government employees; however, they work in concert with the United States Trustee to ensure the efficiency and integrity of bankruptcy proceedings.

The private trustee's main duty is to collect the property of the estate (i.e., the debtor's assets), reduce it to money, and distribute the proceeds to creditors.  *See* 11 U.S.C. §§ 704(a)(1), 726.  The private trustee owes a fiduciary duty to creditors to maximize the value of the bankruptcy estate and, in turn, maximize the amount creditors receive. *See id.*; *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352 (1985); *In re Blasingame*, 920 F.3d at 388.

### D.   The Bankruptcy Court May Dismiss a Chapter 7 Case for Cause under 11 U.S.C. § 707(a)

Section 707(a) authorizes a bankruptcy court to dismiss a Chapter 7 case "for cause" after notice and a hearing.  11 U.S.C. § 707(a). The

statute provides a *non-exhaustive list* of three examples of cause.  *See id.*;
11 U.S.C. § 102(3) (providing that the use of "including" in Code provisions
like section 707(a) is "not limiting").

Because the Bankruptcy Code does not define "cause," and the three
examples of cause in the statute are illustrative only and not exhaustive,
courts give the word "cause" its ordinary meaning. *In re Piazza*, 719 F.3d
1253, 1261 (11th Cir. 2013).  The ordinary meaning of "cause" is "adequate
or sufficient reason."  *Id.* at 1261-62 (collecting sources) ("[I]n applying §
707(a), we adhere to the ordinary meaning of 'cause,' as authorizing
dismissal when adequate or sufficient reason exists for such an action.").
In determining whether cause exists to dismiss a case under § 707(a),
courts may consider "factors as they arise, and . . . use their equitable
powers to reach an appropriate result in individual cases."  *Id.* at 1265.

## III.   BACKGROUND

### A.    GLC's Business and Bankruptcy Filing

GLC is a limited liability company that grew and sold medical
marijuana.  In 2019, the State of Michigan issued GLC a license to operate
as a medical marijuana facility.

GLC's business consisted entirely of growing marijuana and selling it
to marijuana dispensaries or provisioning centers. The company operated

5

out of a leased building in Burton, Michigan.  All of GLC's equipment was used in the manufacture of marijuana; its income was derived solely from sales of marijuana; and its debts all related to the manufacture and sale of marijuana. However, Michael George ("George") – GLC's majority member – used personal funds to start GLC, build out its facility, and cover the security deposit ($9,000) for its leased space.

Once licensed, GLC obtained additional funding from investors to purchase agricultural and security products.  Unfortunately for GLC, Michigan decriminalized marijuana for recreational use shortly thereafter, which increased competition and quickly caused the business to fail.

GLC filed for bankruptcy relief under Chapter 7 of the Bankruptcy Code in June 2021.

The United States Trustee appointed Collene Corcoran as the private trustee to administer the case.

At the time of filing, GLC estimated the liquidated value of its assets was approximately $171,500.  Those assets were: (1) 300 marijuana plants valued at $75,000; (2) a $9,000 security deposit; (3) office furniture valued at $550; (4) computers, printers, and various office equipment worth $1,500; (5) air conditioning units, light fixtures, dehumidifiers, fans, shovels, pots, filters, carts, and a safe totaling $45,000; and (6) security equipment

(34 HD cameras and a DVR system professionally installed to satisfy state regulations) valued at $40,000.

Great Lakes reported unsecured debts totaling $836,747; however, George admitted that some of the scheduled debts were his personal debts.  Most of GLC's debt was owed to its landlord, minority member, and three individuals who helped fund the business.

At the meeting of creditors, George testified that GLC operated its marijuana business until the day it filed its bankruptcy petition, and he left GLC's marijuana crop and growing equipment at the leased grow facility after that.

## B.    The United States Trustee's Motion to Dismiss

The United States Trustee moved to dismiss GLC's bankruptcy case for cause under 11 U.S.C. § 707(a).  He argued that: (1) GLC did not seek bankruptcy relief in good faith; (2) general principles of federal law and equity mandated dismissal of the case; and (3) failure to dismiss the case would compel the private trustee to violate the Controlled Substances Act ("CSA") and potentially expose her to liability. The private trustee supported dismissal and concurred in the United States Trustee's motion.

In opposition, GLC argued that: (1) the private trustee could administer the estate without violating federal or state law because the

marijuana plants had died, and the other estate assets were not inherently illegal; (2) its past conduct does not constitute bad faith; and (3) the federal government had effectively decriminalized medical marijuana unless a party violates state law. Great Lakes also moved for an order compelling the private trustee to abandon the dead marijuana plants.

United States Bankruptcy Judge Joel D. Applebaum held a hearing on the Trustee's motion to dismiss on November 3, 2021.  All of GLC's marijuana plants had died by then, and GLC destroyed them in compliance with a state inspector's order.

At the hearing on the motion to dismiss, the private trustee expressed concern about having "to take control over any assets that are illegal under federal law that [she is] prohibited from administering, and that . . . would jeopardize [her] role as Trustee."  [ECF No. 7-1, PageID.446].  She also notified the court that GLC had not provided her with sufficient business records to allow her to administer the case.

The bankruptcy court asked GLC's counsel why the company was pursuing bankruptcy given that "there's no discharge[], and there's little in the way of assets to sell, but anyone can sell them" outside bankruptcy. [*Id.*, PageID.455].  Counsel did not identify any benefit filing for bankruptcy

relief provided GLC. Instead, he defended the case on the ground that bankruptcy was a better option for one of GLC's non-debtor principals.

### C.   The Bankruptcy Court Dismissed the Case for Cause

After hearing argument, the bankruptcy court issued an oral ruling granting the United States Trustee's motion to dismiss and deeming GLC's motion to compel abandonment moot.

The bankruptcy court found three separate grounds constituted cause for dismissal under 11 U.S.C. § 707(a): (1) the private trustee could not administer GLC's assets, which consisted of marijuana and equipment used to manufacture and distribute marijuana, without violating the CSA; (2) because its business was illegal under federal law, public policy does not support using federal law to benefit GLC; and (3) GLC's violations of the CSA constituted bad faith, making it ineligible for bankruptcy relief.

GLC timely appealed the bankruptcy court's order to this Court.

## IV.   STANDARD OF REVIEW

This Court has jurisdiction under 28 U.S.C. § 158(a)(1), which grants district courts jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges.  The bankruptcy court's order dismissing the case for cause under 11 U.S.C. § 707(a) is a final order.  The standard of

review on appeal is determined by the nature of the action the bankruptcy court took below.  *In re Terex Corp.*, 984 F.2d 170, 172 (6th Cir. 1993).

The Court reviews the dismissal of a bankruptcy case under 11 U.S.C. § 707(a) for abuse of discretion – i.e., the Court will only reverse the decision if the bankruptcy court abused its discretion.  *In re Zick*, 931 F.2d 1124, 1126 (6th Cir. 1991). A bankruptcy court abuses its discretion when it relies upon clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard.  *In re DSC, Ltd.*, 486 F.3d 940, 944 (6th Cir. 2007).  The Sixth Circuit defines abuse of discretion as a "definite and firm conviction that the court below committed a clear error of judgment." *In re M.J. Waterman & Assocs., Inc.*, 227 F.3d 604, 607-08 (6th Cir. 2000) (citation and internal brackets omitted). "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Id.* at 608.

The Court reviews the bankruptcy court's findings of fact for clear error and its legal conclusions *de novo*. *In re DSC*, 486 F.3d at 944.  "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite

10

and firm conviction that a mistake has been committed.'" *Id.* (citation omitted).

## V.     DISCUSSION

GLC moves for an order reversing the bankruptcy court's order and reinstating its bankruptcy case.  However, GLC fails to show that the bankruptcy court abused its discretion by dismissing the case for cause under 11 U.S.C. § 707(a).

Because the bankruptcy court did not abuse its discretion in holding that the impossibility of lawfully administering GLC's bankruptcy estate constitutes cause for dismissal under 11 U.S.C. § 707(a), the Court need not discuss the bankruptcy court's second and third grounds for dismissal.

### A.     The Bankruptcy Court Did Not Abuse its Discretion by Dismissing the Case Based on the Illegality of Administering GLC's Assets

The bankruptcy court's first ground for dismissal was that: (1) the private trustee would violate 21 U.S.C. §§ 841(a), 843(a)(6), and/or 854 if she possessed or administered the marijuana plants and GLC's other assets; and (2) the impossibility of legally administering GLC's assets constitutes cause for dismissal under § 707(a).

In support of this conclusion, the bankruptcy court found that producing, processing, and distributing marijuana was GLC's sole business

11

as of the date it filed for bankruptcy, and GLC used all of its assets to manufacture marijuana.

Numerous courts recognize that "cause" to dismiss exists when a failure to dismiss would require the trustee to administer assets that are used for, or generated by, a business prohibited under the CSA.

In *In re Arenas*, 514 B.R. 887 (Bankr. D. Colo. 2014), the bankruptcy court dismissed the case for cause under § 707(a) upon finding that, although debtors produced and distributed marijuana lawfully under Colorado law: (1) the chapter 7 trustee could not take control of the debtors' property or liquidate the inventory of marijuana plants without himself violating the CSA; (2) administration of the case under chapter 7 was impossible without inextricably involving the court and the trustee in the debtors' ongoing criminal violation of the CSA; and (3) the impossibility of lawfully administering the debtors' bankruptcy estate constituted cause for dismissal under § 707(a). *Id.* at 891-92. *See also In re Way to Grow, Inc.*, 597 B.R. 111, 120 (Bankr. D. Colo. 2018); *In re Medpoint Mgmt., LLC*, 528 B.R. 178, 184-86 (Bankr. D. Ariz. 2015).

The Bankruptcy Appellate Panel for the Tenth Circuit affirmed the dismissal order, succinctly stating: "Can a debtor in the marijuana business obtain relief in the federal bankruptcy court? No." *In re Arenas*, 535 B.R.

845, 847, 853 (10th Cir. BAP 2015) ("The impossibility of lawfully administering the estate constituted cause for dismissal under § 707(a).").

Consistent with those cases, the bankruptcy court held that the private trustee could not administer the marijuana and marijuana-related equipment that comprised GLC's bankruptcy estate without violating the CSA.

GLC concedes that "[a] case may be dismissed if a trustee cannot lawfully administer estate assets." [ECF No. 5, PageID.216].  However, it argues that: (1) it did not own anything illegal when the case was dismissed because the private trustee constructively abandoned the marijuana plants by allowing them to die; and (2) its remaining assets were not illegal by nature and could be administered without violating the CSA.

The United States Trustee says neither argument has merit.  The Court agrees.

First, the trustee did not "abandon" the marijuana plants.  The Bankruptcy Code requires notice to interested parties and a hearing before a private trustee may abandon estate property.  11 U.S.C. § 554(a) ("After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."). The private trustee never gave notice that she

sought to abandon the marijuana plants and never requested a hearing on abandonment. Under § 554(a), she could not unilaterally abandon the plants.  Moreover, although GLC moved for an order to compel the trustee to abandon the marijuana plants, the bankruptcy court deemed the motion moot based on its order of dismissal.

As the United States Trustee points out, the fact the plants may have died and/or were destroyed "aptly illustrates the problem with allowing a criminal business such as [GLC] to utilize bankruptcy. The filing of this case placed the chapter 7 trustee in a dilemma: take possession of [GLC's] assets (as required by bankruptcy law) and run the risk of criminal prosecution under the CSA or violate her fiduciary obligation to preserve [and liquidate] those assets in order to avoid the risk of criminal prosecution [– to the detriment of creditors]."  [ECF No. 7, PageID.260].

GLC's second argument – i.e., its remaining assets were not illegal by nature and could be administered without violating the CSA – also fails.

The bankruptcy court held that GLC used all of its other assets in the manufacture of marijuana. GLC fails to challenge this factual finding.

The bankruptcy court also found that the private trustee would violate 21 U.S.C. § 843(a)(6) by possessing and/or administering GLC's other assets because GLC used them to manufacture marijuana.  [ECF No. 7-1,

PageID.481-83]. GLC fails to mention § 843.  Instead, GLC summarily states that "[a]ll [its other assets] could be sold and administered by the Chapter 7 Trustee [because] there is nothing listed or possessed by [it] that was in and of itself an 'illegal item' or the product of an illegal scheme or network."  [ECF No. 5, PageID.219].  GLC's argument lacks support.

Since GLC failed to challenge the bankruptcy court's factual finding, the Court accepts as true that GLC used all its assets in the manufacture of marijuana.

In light of that finding, the bankruptcy court's conclusion that it would be illegal for the private trustee to possess or administer GLC's assets was not an abuse of discretion; the CSA makes it unlawful to possess equipment used to manufacture a controlled substance.  *See* 21 U.S.C. § 843(6) (it is "unlawful for any person knowingly or intentionally . . . to possess . . . any equipment . . . used to manufacture a controlled substance . . . ."); 21 U.S.C. § 802(15) (broadly defining "manufacture" to include "the production . . . of a drug or other substance"); 21 U.S.C. § 802(22) ("'[P]roduction' includes the manufacture, planting, cultivation, growing, or harvesting of a controlled substance.").

Instead of addressing 21 U.S.C. § 843, GLC argues that the CSA allows the cultivation and use of cannabis.  In support of this argument,

GLC cites 21 U.S.C. § 802(16)(b), which excludes from the definition of "marijuana" certain components of the plant – such as hemp and "the sterilized seed of such plant which is incapable of germination."  However, GLC fails to argue, let alone show, that its marijuana plants fell within this exclusion.  That is likely because although the CSA does not criminalize certain excluded portions of the plant, "it is clear that a growing Cannabis plant falls within the definition of 'marijuana.'" *Monson v. Drug Enf't Admin.*, 522 F. Supp. 2d 1188, 1198 (D.N.D. 2007); *see also* 21 U.S.C. § 812(c), Schedule I(c)(10) (listing marijuana as a Schedule I controlled substance).

GLC also argues that there is no evidence that it acquired its property illegally or from proceeds of an illegal enterprise.  However, this argument misconstrues the basis of the bankruptcy court's decision.

The bankruptcy court did not find that GLC acquired its assets with illegal proceeds; it held that because GLC used its assets in the manufacture of marijuana, the private trustee could not lawfully possess or administer those assets.  This holding is well supported and did not constitute an abuse of discretion.

**B.    GLC's Remaining Arguments Lack Merit**

GLC makes two additional arguments: (1) dismissal of its case based on the nature of its business deprives it of equal protection under the law;

16

and (2) the federal government, in practice and policy, condones medical marijuana when participants comply with state law.  Both arguments fail.

As the United States Trustee points out, GLC's equal protection argument is conclusory.  GLC fails to explain its theory of how the bankruptcy court's finding of cause under section 707(a) violates the Equal Protection Clause.  Therefore, GLC waives this argument.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.").  Moreover, there is no constitutional right to bankruptcy relief.  *United States v. Kras*, 409 U.S. 434, 446 (1973).

GLC's other argument is also conclusory. GLC contends that it "had no expectation that what [it] was doing could be construed as illegal" and its cultivation and sales of medical marijuana cannot constitute cause to dismiss, because the federal government condoned and encouraged state-compliant participation in the medical marijuana industry.  GLC says the bankruptcy court's dismissal of its case is at odds with: (1) a 2013 memorandum from Deputy Attorney General James M. Cole to United States Attorneys providing guidance regarding marijuana enforcement (the

"Cole memorandum"), [*see* ECF No. 7, PageID.287]; (2) federal taxation of revenue from medical marijuana businesses; and (3) the Ninth Circuit's interpretation in *United States v. McIntosh*, 833 F.3d 1163 (9th Cir. 2016), of a rider to Congressional appropriations legislation which prohibited United States DOJ actions that prevent states from implementing state laws legalizing marijuana.

The United States Trustee says GLC is wrong.  The Court agrees.

First, the Cole memorandum is no longer in effect; the Attorney General rescinded it in January 2018. [See ECF No. 7, PageID.291].

Second, taxing marijuana revenue does not condone marijuana businesses, nor does it insulate them from federal prosecution or the denial of other benefits under federal law. The federal government does not concern itself with the lawfulness of the income it taxes. *See* 26 U.S.C. § 61(a) (defining gross income as "all income from whatever source derived"). The fact that a business is unlawful under federal law is not a reason to exempt it from paying the taxes it would otherwise have to pay; such a policy would reward those who engage in criminal activity.

Third, in *McIntosh*, the Ninth Circuit held that the budget rider prohibited the DOJ from spending funds from relevant appropriations acts to prosecute individuals for marijuana offenses in states where marijuana is

legal, when those individuals fully complied with state marijuana law. 833

F.3d at 1176-77. However, the court explicitly warned that the

appropriations rider did not legalize marijuana:

> To be clear, § 542 does not provide immunity from prosecution
> for federal marijuana offenses. The CSA prohibits the
> manufacture, distribution, and possession of marijuana. Anyone
> in any state who possesses, distributes, or manufactures
> marijuana for medical or recreational purposes (or attempts or
> conspires to do so) is committing a federal crime. The federal
> government can prosecute such offenses for up to five years
> after they occur. *See* 18 U.S.C. § 3282. Congress currently
> restricts the government from spending certain funds to
> prosecute certain individuals. But Congress could restore
> funding tomorrow, a year from now, or four years from now, and
> the government could then prosecute individuals who
> committed offenses while the government lacked funding.

*McIntosh*, 833 F.3d at 1179 n.5. GLC knew or should have known that its

business violated federal law.

Finally, to the extent that GLC argues that the United States Trustee's

motion to dismiss equates to criminal prosecution in violation of the

appropriations rider, it misconstrues both the appropriations rider and the

narrow holding of *McIntosh*.  A motion to dismiss, and/or dismissal of, a

bankruptcy case due to the inability to administer the bankruptcy estate

without violating the CSA does not violate the budget rider's prohibition for

several reasons.

19

Dismissal of a bankruptcy petition is not a criminal prosecution; bankruptcy relief is a civil remedy.  Unlike the conflict between state laws legalizing marijuana and the CSA, a law that authorizes marijuana businesses does not conflict with an interpretation of the Bankruptcy Code deeming those businesses ineligible for bankruptcy protection.  Even certain legal businesses are precluded from seeking bankruptcy relief. *See* 11 U.S.C. § 109.

Moreover, and most notably, the plain language of the appropriations rider limits the use of the DOJ's funds only "to prevent [certain states listed in the rider] from implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana." [*See* ECF No. 5, PageID.224].  Nothing about a motion to dismiss a bankruptcy case, even a motion filed by the United States Trustee, prevents states from implementing state laws to legalize medical marijuana.

GLC fails to show that the bankruptcy court abused its discretion.

## VI. CONCLUSION

One could potentially disagree with the bankruptcy court's decision. But it was reasonable and not an abuse of discretion. There was no error in the court's findings of fact. It properly applied the law and used proper legal standards.

Numerous other courts have found that inability to administer a bankruptcy estate without violating the CSA constitutes cause for dismissal under 11 U.S.C. § 707(a), and the GLC decision is in line with them. *See In re M.J. Waterman & Assocs.*, 227 F.3d at 608 (explaining that an abuse of discretion occurs only if no reasonable person could agree with the bankruptcy court's decision).

The Court **AFFIRMS** the bankruptcy court's order.

**IT IS ORDERED**.

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  August 18, 2022